1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Dennis G. Chappabitty, Okla. Bar #1617**
**Attorney at Law**
**P.O. Box 292122**
**Sacramento, CA 95829**
**(916) 682-0575 (voice/fax)**

Attorney for Plaintiff Phillip Gallegos

02 AUG

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP GALLEGOS,

                    Plaintiff,

    vs.

JICARILLA APACHE NATION, a Federally-
Recognized Indian Tribe; CLAUDIA VIGIL-
MUNOZ, as a Tribal Council Member and
Individually; STANFORD SALAZAR, as a
Tribal Council Member and Individually;
TROY VICENTI, as a Tribal Council Member
and Individually; TYRON VICENTI, as a Tribal
Council Member and Individually;
HERBERT MUNIZ, as Tribal Council Member
and Individually; CARSON VICENTI, as a
Tribal Council Member and Individually;
LESTER ANDRES, as a Tribal Council Member
and Individually; RONALD JULIAN, as a Tribal
Council Member and Individually;
HOYT VELARDE, as a Tribal Employee
and Individually; DOREEN VIGIL, as a Tribal
Employee and Individually; LEESON VELARDE,
as a Tribal Employee and Individually;
ISAAC ROYSTON, as a Tribal Employee
and Individually; TIMOTHY ANDERSON,
as a Tribal Employee and Individually;
ESTEBAN BLANCO, Tribal Employee
and Individually; LILLIAN VENENO, as a
Tribal Employee and Individually; and
TINA GOMEZ, as a Tribal Employee and
Individually,

                    Defendants.

CIV. NO. **CIV 02-1095-WPJ**

COMPLAINT FOR DECLARATORY
RELIEF FOR VIOLATIONS OF
INDIAN CIVIL RIGHTS ACT,
FOR CONSPIRACY TO VIOLATE
FEDERAL CIVIL RIGHTS
AND FOR DAMAGES

**JURY TRIAL REQUESTED**

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**    -1-

Plaintiff Phillip Gallegos, complains and alleges as follows:

## I. JURISDICTION

1. This Complaint seeks, inter alia, damages pursuant to Title 42 U.S.C. §§ 1985 - 1986 for violations of Plaintiffs civil rights and 25 U.S.C. § 1301, *et seq.* Jurisdiction is founded under Title 28 U.S.C. §§ 1331 and 1343(1) - (2).

## II. VENUE

2. Plaintiffs claims arose within the confines of the reservation of the Jicarilla Apache Nation ("Nation"). Therefore, venue lies in the District Court of New Mexico, Santa Fe Division, pursuant to 28 U.S.C. § 1391(b)(2).

## III. PARTIES

3. Plaintiff, Phillip Gallegos is a citizen of the United States and resides in the State of New Mexico. Plaintiff Gallegos is Hispanic and not a member of the Nation.

4. Defendant Nation is and, at all times herein mentioned, was an Indian Tribe, duly organized and existing under its own Constitution and Bylaws, approved in 1937 under the Indian Reorganization Act, and the laws of the United States of America. On information and belief, the Nation receives federal funding to operate and manage its law enforcement program and other related tribal programs such as its domestic violence program.

5. Defendant Claudia Vigil-Muniz is and, at all times herein mentioned, was the President of the Nation and defendants Stanford Salazar, Troy Vicenti, Tyron Vicenti, Herbert Muniz, Carson Vicenti, Lester Andres, and Ron Julian were, at all times herein mentioned, council members for the Nation who took and/or refused to take action under color of federal and tribal law that affected the legal rights and property interest of plaintiff. In their individual capacities, each defendant is also sued for breach of their duty to refrain from injuring plaintiff's person or property or deprive him

of any right or privilege as a citizen of the United States as a consequence of any act done in furtherance of any conspiracy mentioned in 42 U.S.C. § 1985.

6. Defendant Hoyt Velarde is and, at all times herein mentioned, was employed by the Nation as Executive Director of Public Safety who took action under color of federal and tribal law. In his position as Executive Director of the Nation's Public Safety Department, defendant Velarde is and was duty bound to insure that tribal members and non-members residing on the reservation and non-members of the general public working, visiting or traveling through the Nation's reservation were guaranteed their fundamental rights as granted by the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1301 *et seq.* In his individual capacity, defendant Hoyt Velarde is sued for breach of his duty to refrain from injuring plaintiff's person or property or deprive him of any right or privilege as a citizen of the United States as a consequence of any act done in furtherance of any conspiracy mentioned in 42 U.S.C. § 1985.

7. Defendants Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, and Esteban Blanco are and, at all times herein mentioned, were Police Officers for the Nation's Police Department who took action under color of tribal and federal law. As sworn officers of defendant Nation, each of them were obligated to respect tribal and federal civil rights of all persons they encountered while engaging in law enforcement activities for the Nation. In their individual capacities, each defendant is sued for breach of their duty to refrain from injuring plaintiff's person or property or deprive him of any right or privilege as a citizen of the United States as a consequence of any act done in furtherance of any conspiracy mentioned in 42 U.S.C. § 1985.

8. Defendant Lillian Veneno and Tina Gomez were and, at all times herein mentioned, are employees of the Nation's Human Resources Department who took action under color of federal and tribal law. In their individual capacities, each defendant is sued for breach of their duty to refrain

from injuring plaintiff's person or property or deprive him of any right or privilege as a citizen of the United States as a consequence of any act done in furtherance of any conspiracy mentioned in 42 U.S.C. § 1985.  By her own admission, Veneno is responsible for the relevant contents of the grievance hearings and she has the authority to exclude witnesses from employment grievances.

9. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of the other defendants.

## IV.  COMMON ALLEGATIONS

10. Plaintiff Gallegos is informed and believes that within the Nation's Police Department was a group of "rogue" officers that engaged in a pattern of police corruption that has resulted in numerous violations of the federal and tribal civil rights of members of the Nation and non-members working on or visiting the reservation.  Plaintiff is informed and believes that the group of "rogue" officers included, but was not limited to defendants Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco and/or other unnamed personnel of the Nation's Police Department.

11. Plaintiff is informed and believes that defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson and/or other of the Nation's Police Officers, as well as defendants Lillian Veneno and Tina Gomez, individually and/or in concert with them, engaged in repeated and serious acts of misconduct and federal and tribal civil rights violations against plaintiff on the Nation's Reservation.  Despite the frequent nature of the misconduct and federal and tribal civil rights violations committed by defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde and Isaac Royston, Timothy Anderson, defendants Lillian Veneno, Tina Gomez, the Nation's Council failed to take any appropriate remedial action prior to the incidents alleged herein involving the plaintiff.

12. Plaintiff is informed and believes that as a matter of tribal official policy, rooted in an entrenched posture of deliberate indifference to the federal and tribal constitutional rights of American citizens and foreign nationals who live, visit, work and/or travel within the boundaries of the Nation's Reservation that the Nation has long allowed plaintiff, and persons similarly situated to him, to have their constitutional rights violated by its police officers by acts in furtherance of conspiracies described in 42 U.S.C. § 1985.  This deeply rooted policy on the Nation's reservation has engendered a climate of fear and intimidation among tribal and non-tribal members working and residing on the property owned by the federal government and held in trust for the benefit of the Nation.  This climate created an atmosphere where persons, like plaintiff Gallegos, trying to correct injustices caused by their own police force fear for their lives and property if they take active and affirmative measures to report incidents to federal law enforcement agencies of corruption caused by the Nation's Police Department.

13. Plaintiff is informed and believes that the abuses in question were the product of a culture of tolerance within the Nation's Police Department that targeted "whistleblowers" for termination from tribal employment.  This culture is rooted in the deliberate indifference among the Nation, its elected officials, supervisors, employees,  individually and/or acting in concert with one another, who have routinely acquiesced to the misconduct and otherwise failed to take necessary measures to prevent and curtail such misconduct, particularly the firing of "whistleblowing" non-tribal member employees such as plaintiff Gallegos and Officer Mike Lobato.

14. On July 1, 1999, plaintiff Gallegos suspended defendant-Officer Timothy Anderson for filing a false incident report.  By letter, dated July 20, 1999, defendant Tina Gomez issued a determination that Gallegos' disciplinary action against Anderson was invalid due to "Personnel Policies and Procedures" not being followed by management.

15. On or about December 23, 1999, an internal affairs investigation by the Bureau of Indian Affairs ("BIA"), Office of Law Enforcement Services ("OLES"), Internal Affairs Division was requested by then Acting Chief of Police, Alan Tafoya, as a result of the repeated acts of misconduct of defendant Timothy Anderson (filing false reports), defendants Leeson Velarde and Issac Royston (Fraud, Willful Neglect of Duties and Criminal, Dishonest and other behavior that interferes with the proper performance of duties), defendant Doreen Vigil(neglect of duties) and defendant Hoyt Velarde (negligence in his duties) while on duty. Tafoya's request to federal law enforcement officials was a result of an investigation conducted by plaintiff Gallegos at tribal level.

16. On January 1, 2000, Officer Lobato reported an incident that he observed a party in progress at defendant Leeson Velarde's residence. He described that Officer Nancy Velarde, Officer Jacob Beach and he were dispatched to the Velarde residence to serve a criminal arrest warrant on "Pete Rocha". When they arrived at the Velarde residence, Rocha had left and the officers stopped him and arrested him, a short distance away, on the outstanding warrant and for drunk driving. In his incident report, Officer Lobato states that Rocha blurted out "why don't you arrest Leeson and everybody at his party, they all walked into Leeson's back bedroom one by one and snorted some of this same cocaine that I have that's not right." Lobato related that Rocha went on to state: "He deals drug and he has all the kids sell and distribute, why do you think he gets away with it." In his incident report, Lobato alleged that the disposition log and report of the Rocha incident had disappeared.

17. On January 27, 2000, Hoyt Velarde, as Executive Director of Public Safety, met with plaintiff Gallegos and accused him of victimizing Officers Leeson Velarde and Isaac Royston by looking at their time cards and monitoring whether they were at work. Velarde told plaintiff that if he reported the results of any ongoing investigations of police personnel to anyone other than him,

plaintiffs employment would be terminated.

18. In a letter to Sergeant Alan Tafoya, dated March 16, 2000, Theodore R. Quasula, then the Director, BIA, OLES stated: "In addition, there is strong evidence indicating the officers are defrauding the [Nation] by conducting outside employment activities while their time cards indicate they are on duty and available for service calls." In regards to allegations raised by plaintiff that defendant Timothy Anderson had falsified police reports, Quasula stated: "Regarding the allegation of Filing False Reports against Officer Timothy Anderson, statements obtained from officers who were on the scene and reports submitted to BIA-IAD, indicates Officer Anderson did indeed attest to facts he was not witness to." Further, he stated: "There appears to be sufficient information to sustain the allegations against Officer Anderson."

19 . On or about March 16, 2000, the same letter prepared by Quasula was forwarded to the Nation affirming the allegations of misconduct by members of the Nation's Police Department as previously reported by plaintiff to federal law enforcement officials, Quasula concluded: "After carefully reviewing all of the relevant information, it was found [the] investigations conducted by Sgt. Phillip Gallegos have sustained most of the charges."

20. On July 14, 2000, plaintiff Gallegos was placed on administrative leave by Nation President Roger Vicenti, told plaintiff not to take any equipment or files from the facility and to give his department keys to Acting Chief of Police Alan Tafoya. President Vicenti told plaintiff that he was being placed on administrative leave because of fears plaintiff might be in physical danger because of hard feelings by some of the police department personnel and he did not want anyone hurt. Plaintiff was responsible for maintaining the highly confidential and sensitive personnel files, including the file of Officer Mike Lobato, a non-member, who had been engaged in "whistleblowing" and reporting evidence of corruption in the Nation's Police Department to the

Federal Bureau of Investigation (FBI) for several months. During the period that Lobato was engaged in his disclosure of incidents of corruption to the FBI, his personally owned vehicle was vandalized and broken into while parked in front of the Nation's police station or in other secured areas around the Police Department.

21. On July 28, 2000, Lobato completed and signed an incident report describing that, on July 29, 2000, defendant Hoyt Velarde told him that weapons and police equipment were missing and that plaintiff was responsible for it. Lobato also describes a group meeting of police department employees held on July 27, 2000, attended by President Vicenti, where defendant Leeson Velarde told the assembled group that plaintiff was "unfair" and "unfit" to be a sergeant for the Nation's Police Department. At some point during the meeting, President Vicenti directed the non-tribal member officers to separate themselves from the tribal members and stand in the Council Chambers while he continued the meeting with the tribal member officers.

22. On August 25, 2000, plaintiff Gallegos met with Background Investigator Joe Madrid of the New Mexico State Police for the purpose of interviewing for possible employment with the New Mexico State Police. Madrid asked plaintiff why he was on administrative leave. Plaintiff informed Investigator Madrid of what President Vicenti had told him. Plaintiff was then told by Madrid that defendant Hoyt Velarde had told him that plaintiff had embezzled tribal monies, misappropriated other funds for the personal gain of relatives of plaintiff, stolen two sniper rifles and several AR-15 rifles belonging to the Nation's Police Department, acts constituting federal felonies. Investigator Madrid told plaintiff that, while on a visit to the Nation's Police Department, defendant Hoyt Velarde had shown Investigator Madrid plaintiff's office door and that it was covered in "Police Evidence Tape" giving the impression the office had been sealed for investigative purposes. Plaintiff was also told by Investigator Madrid that Hoyt Velarde had not allowed the Investigator

1    access to plaintiff's personnel file.

2        23. On September 26, 2000, plaintiff Gallegos was contacted by Officers Martin Rivera and

3    Keith Trujillo and informed that they had seen Sergeant Eli Notsinneh, Doreen Vigil, and Esteban

4
5    Blanco in the office that plaintiff was assigned.  In a letter dated March 14, 2001, Chief of Police

6    Roger Kane told Tina P. Gomez that: "Recently, Criminal Investigator, Estaban Blanco and Sgt. Eli

7    Notsinneh discovered a file containing background information regarding Michael Lobato's past

8
9    history."  Kane's letter went on to cite that: "This information was discovered in the former Patrol

10   Sgt. Philip Gallegos' office."  Lobato had asked for access to his personnel file on October 4, 2000.

11   Notsinneh did not give the requested file to Lobato but insinuated that he had broken in and taken

12   it himself.

13       24. On September 27, 2000, plaintiff Gallegos provided defendant Tina Gomez and the

14   newly-elected Tribal President, Claudia Vigil-Muniz with an outline of numerous wrongdoings

15
16   involving the Nation's Police Department personnel as well as a complaint about the actions of Hoyt

17   Velarde with regards to his false, reckless and unsubstantiated statements made to State Police

18   Investigator Joe Madrid about Gallegos engaging in felonious criminal activity on the Nation's

19   reservation.  Plaintiff also requested that he be allowed access to his personal equipment.  Plaintiff

20   was informed he would not be allowed access to the his personal equipment, consisting of: Colt

21
22   Junior (w/two magazines), a 45 backup (w/two magazines and holster), two flashlight, handcuffs,

23   straight baton, side handle baton, posse box, gloves, binoculars, minolta camera (w/two lenses),

24   camera case, file case, roller meter, shirt (Torrance P.D.) and polaroid camera.  The total value of

25   plaintiff's personal property that was stolen is approximately $3,092.00.  Replacement value would

26   be significantly higher due to prices on these items going up since purchase.

27       25. On October 2, 2000, defendant Hoyt Velarde wrote a memorandum describing that, at

28

                                              -9-

4:00pm.on the afternoon of September 27, 2000, he unexpectedly discovered that the door on plaintiff's office was not locked and the evidence seal was broken. He noted in his memorandum that ". . .ACO Witman Tafoya came out of his office and said that this door had been like that for awhile, since sometime last week." He also noted that defendant Doreen Vigil had pulled open one of the drawers on the desk used by plaintiff and found keys to the cabinet drawer where records of Keith Trujillo and Elias Vigil were kept by plaintiff. In a separate memo written on the same date, defendant Hoyt Velarde notes: "Unknown if anything was taken or left behind."

26. On October 2, 2000, plaintiff Gallegos was served with a notice that he had been terminated from employment. Within the three-page document was a statement that "the specific behavior and dates are included in the documents made available to Human Resources". The charges listed were: 1) willful neglect in the performance of the duties of the position to which the employee is assigned; 2) disregard for or violations of the Jicarilla Apache Tribal Personnel Manual as well as department policies and regulations; 3) violation of any reasonable or official order, refusal to carry out lawful and reasonable directions given by immediate supervisor or other acts of insubordination: 4) criminal, dishonest or other conduct which interferes with effective job performance or has an adverse efficiency on the efficiency of the Jicarilla Apache Tribal Service; and 5) disregard for violations of Jicarilla Apache Tribal Laws and Ordinances. These charges repeated nothing more than the verbatim the language contained in the Nation's Personnel Policies and Procedures.

27. On October 2, 2000, plaintiff Gallegos went to the Human Resources Department to obtain the documents supporting his firing and was informed that Tina Gomez was the staff person handling the termination process. Plaintiff was told to return later in the day to speak with Lillian Veneno about the documents. When plaintiff returned, Lillian Veneno told plaintiff that Human

-10-

1  Resources did not have any such documents.

2      28. On October 3, 2000, plaintiff Gallegos returned and was told Tina Gomez was
3
   unavailable. Plaintiff left a written request for the documents detailing the basis for his termination.
4
5  That same day, plaintiff went to the police station and met with Sergeant Eli Notisinneh to turn in

6  all departmentally owned and issued equipment.  While plaintiff was turning in equipment, he tried

7  to get his personal equipment described above.  At the same time, plaintiff noticed that the office had

8  been ransacked.  There was a ceiling tile that was broken and a part of it was missing.  Eli Notsinneh
9
   admitted that the office had been broken into at some unspecified time.  From disclosures made in
10
11 the March 14, 2001 letter of Chief Kane, there is reason to believe that defendant Esteban Blanco

12 and Sgt. Eli Notsinneh participated in the break in and burglary of plaintiff's office and stole his

13 personal equipment and firearms, stole personal files kept by plaintiff and perused those sensitive

14 files, including Lobato's, in violation of federal privacy laws.

15
       29. On October 4, 2000, Tina Gomez informed plaintiff that there were no accompanying
16
17 documents.  Plaintiff also lodged a complaint with Tina Gomez that his personal equipment was

18 missing and he wanted his property returned.  Plaintiff further instructed Tina Gomez that he had

19 reported the missing items to Eli Notsinneh, who had been instructed to oversee the return of

20 department property.

21
       30. On October 13, 2000, Plaintiff Gallegos submitted a "Grievance Hearing" request form,
22
23 citing that he did not know why he had been terminated.  Plaintiff requested documentation/evidence

24 that the Tribe intended to present at hearing which would cite the reasons for his termination.

25 Plaintiff was informed by Tina Gomez that he had all of the needed documents and would not be

26 afforded any further information.

27
       31. On November 3, 2000, plaintiff Gallegos secured the services of Dennis Chappabitty,
28

-11-

attorney at law, Sacramento, CA to represent him in the tribal grievance proceeding.  On behalf of plaintiff, Mr. Chappabitty wrote to Tina Gomez requesting all documentation/evidence the Tribe was going to use against him during the hearing to support his firing.  Chappabitty also requested the hearing be postponed to provide plaintiff adequate time to prepare for the hearing.

32. On December 27, 2000, plaintiff received information that the hearing had been rescheduled to January 26, 2001.  The Tribe did not provide any information regarding supporting documentation/evidence and requested from Gallegos a list of any potential witnesses he intended to call.

33. On January 22, 2001, plaintiff received a phone call from Tina Gomez requesting that he go the Human Resources Department to retrieve documents.  When plaintiff arrived at the Human Resources Office, he was given a packet of documents that Tina Gomez indicated were the documents the Tribe intended to use against him at the hearing.  There was nothing new in the documents that he had not previously been given.

34. On January 23, 2001, plaintiff's attorney went to Dulce, New Mexico with Linda C. Amelia, paralegal, to interview witnesses, including several of the Nation's non-tribal member Police Officers supportive of Gallegos' and Lobatos' whistleblowing efforts and to meet with plaintiff in advance to prepare for the hearing.  Without advance warning, Tina Gomez informed plaintiff that the hearing would be cancelled as the Nation needed to confer with tribal attorneys.

35. On February 14, 2001, plaintiff Gallegos was approached by Officers from the Jicarilla Apache Police Department who informed him that Doreen Vigil had lodged a complaint that he was chasing her around town and that she is in the process of filing a restraining order against him.  On February 26, 2001 the restraining order hearing was held before the Hon. Judge Pro-Tem, Roderick Kennedy.  Plaintiff was cleared of any wrongdoing on the matter and the restraining order was

1   dropped.

2       36. On February 16, 2001, plaintiff received a letter from Lillian Veneno stating he could not

3
    use Lee Martinez Jr, past Executive Director of Community Affairs, as a witness to testify on his
4
5   behalf on the proper administrative process to be followed to correctly fire a tribal employee.

6   Veneno stated that Martinez did not have direct knowledge of Gallegos' case.

7       37. On February 22, 2001, plaintiff received a letter from the Nation informing him that the
8
    hearing date would be set for March 1, 2001.
9
        38.  On February 26, 2001, plaintiff's attorney sent a letter to Mary A. Woodward, Esq.,
10
11  Miller, Stratvert & Torgeson, P.A., Albuquerque, N.M. citing that: "In such a situation, I would not

12  want to proceed to represent an organizational client at a hearing only to find out that persons within

13  that organization took action to improperly keep evidence and witnesses allegations from the

14
    grievant when they were compelled by tribal law to divulge such information early on."
15
        39. On March 1, 2002, Officer Lobato was fired by the defendant Nation on the basis of an
16
17  allegation that he misrepresented his background on his employment application.  Lobato was going

18  to testify in favor of Gallegos at hearing to prove that Gallegos' firing was the result of "retaliation."

19  On the date Lobato was terminated, another officer, Keith Trujillo, threatened Lobato inside the

20  Police Department by saying: "I will find you off-reservation and gut you like an elk."

21
        40. On March 2, 2001, Plaintiff Gallegos appeared for his hearing held in Dulce, New
22
23  Mexico.  Plaintiff's attorney argued for a dismissal on the basis that the Nation's Personnel Manual

24  included a provision that employees must be afforded written documentation, within 48 hours of the

25  date of termination, and must be informed of the charges, specific dates, times and behaviors that

26  led to the termination.  Nonetheless, the Nation decided to go on with the hearing before a 3 member

27
    grievance panel was consolidated with the grievance hearing of Alan Tafoya, the ex-Acting Chief
28

-13-

of Police for the Nation and tribal member, before a separate 3 member panel.

41. Prior to the start of the consolidated hearing, plaintiff overheard the hearing moderator, Lillian Veneno, and Tina Gomez conversing. They decided that the hearing would end on March 3, 2001 at noon. Plaintiff's attorney objected to setting the deadline since he anticipated that Acting Chief Tafoya's hearing would take up most of the first day and substantially part of the second day and he could not bring on his witnesses and evidence showing that Gallegos was fired for his "whistleblowing" activities. Plaintiff's counsel was forced to proceed and presented his opening statement detailing the specific and serious instances of departmental corruption that he would present to the panel to prove that his firing was the result of unlawful retaliation.

42. On the morning of Friday, March 3, 2001, the panel for Tafoya decided to go no further ruling that the charges against the former Acting Chief of Police should be dismissed for lack of sufficient proof by the Nation that Tafoya had been properly terminated from employment according to administrative procedures. At the point when Tafoya's firing was declared in error, the Nation had called all but one of its witnesses. Notwithstanding the fact that Tafoya's firing had been adjudged as wrongful and in violation of procedure, the Gallegos hearing panel announced that they would uphold the termination of plaintiff although he had been subjected to the same "technical" and faulty pre-hearing administrative process as Tafoya. At that time, plaintiff's attorney objected since plaintiff was not afforded the opportunity to call his witnesses and present his case-in-chief. The defendant Nation and the Moderator indicated that plaintiff would not be allowed to provide a defense or call witnesses and the entire proceeding was concluded, on information and belief, so members and persons involved in the proceeding could prepare to attend a Dulce High School basketball game in another town and to keep plaintiff from putting on evidence and testimony to prove that he was the victim of a conspiracy by some of the named defendants to retaliate against

1  him for "whistleblowing" on their corrupt activities.

2      43. On March 17, 2001, plaintiff Gallegos formally appealed to the Nation's Council the

3  Panel's decision to uphold his termination without giving him a chance to put on his case-in-chief

4  to prove that his firing was the result of procedural irregularities and a conspiracy by Hoyt Valerde,

5  Leeson Valarde and other named defendants to punish and retaliate against him for his

6  "whistleblowing" activities.  Exhibit A.  At the time he filed his appeal, plaintiff Gallegos was

7  informed that the matter would be heard at the next scheduled Tribal Council Meeting in accordance

8  with provisions in the Personnel Policies and Procedures Manual.

9

10     44. On April 3, 2001, plaintiff Gallegos received written notification that his appeal in the

11 matter of his wrongful termination would be heard on April 5, 2001 and that he was to be present

12 in the event the council will hear testimony from him.

13

14     45. On April 5, 2001, plaintiff presented himself, without benefit of his legal counsel, at the

15 appeal hearing and Claudia Vigil-Muniz informed him there was too much information for the

16 Council to look through and that he would be informed as to the new appeal hearing date.

17

18     46. On April 18, 2001, plaintiff Gallegos received correspondence from Claudia Vigil-Muniz

19 informing him that the matter would be resolved by the end of May 2001.

20     47. On September 26, 2001, plaintiff's counsel wrote a letter to defendant Vigil-Muniz which

21 referred to a BIA investigation report which, on information and belief, established that there was

22 sufficient evidence to support several indictable offenses against several of the defendants that were

23 referred to the United States Attorney, District of New Mexico.

24

25     48. On March 28, 2002, plaintiff received a certified letter indicating that on March 11, 2002,

26 the Tribal Council passed a resolution denying plaintiff's appeal and upholding his termination with

27 no reasons given for the denial. On information and belief, the receipt of this letter coincided with

28

the completion of the Council's review of the federal grand jury report that made a finding that there was a sufficient basis to prosecute several of the defendants named herein for several counts involving federal felonies or misdemeanors.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (42 U.S.C. §§ 1985 -86)
### (AGAINST ALL DEFENDANTS AS INDIVIDUALS)

49. Plaintiff Gallegos incorporates by reference and re-alleges Paragraphs 1 though 48.

50. At all times relevant to this action, plaintiff Gallegos was a "Patrol Sergeant" and he was tasked with the supervision, discipline and recommendation of discipline of subordinate officers within the Patrol Division as well as other divisions within the Nation's Police Department.

51. Plaintiff Gallegos was under a legal duty to enforce the Nation's laws and to insure that any person subjected to the Nation's sovereign law enforcement authority was protected from violations of their federal and tribal civil rights by persons under his supervision. Plaintiff also owed a legal duty to report any instances that he observed or any instances reported to him where any police officer employed by the Nation violated the federal and tribal civil rights of persons subjected to the Nation's law enforcement authority.

52. In the course of carrying out his official duties to enforce the laws of the Nation and prevent crime, plaintiff Gallegos uncovered evidence of possible criminal activities within the Nation's Police Department and reported this to federal agencies. The misconduct included fraud, embezzlement, falsifying reports, falsifying time cards, use of excessive force, assaults, battery under the color of authority, conspiracy to violate federal and tribal civil rights of citizens, the hiding of criminal wrongdoings of police officers from federal prosecutors when such reporting was mandatory and leaving their assigned duty posts without authorization.

53. Plaintiff is informed and believes that his appeal of a wrongful termination pursuant to provisions of the Nation's Personnel Policies and Procedures Manual was subjected to a malicious scheme and wrongful manipulation of procedures intended by defendants Lillian Veneno and Tina Gomez, in their individual capacities, to result in a deprivation of his right to due process, his right to a fair hearing, his right to call witnesses on his behalf, and equal protection of the law, as a non-tribal member, as guaranteed under Constitution of the United States, the Bill of Rights and the ICRA.

54. Plaintiff alleges that Doreen Vigil fabricated evidence and committed perjury when she obtained a temporary restraining order against plaintiff on February 14, 2001.  On information and belief, her efforts were timed so that her restraining order would coincide with plaintiff's grievance hearing and serve as grounds, if successful, to allow the Nation's attorneys to cast doubt on Gallegos' character, credibility and truthfulness at the hearing.

55. Plaintiff alleges that defendant Leeson Velarde took actions and provided false evidence and testimony against him before and during the March 2, 2001 so that he could become the Police Chief the Nation's Police Department.  Plaintiff and others knew that defendant Leeson Velarde had been convicted in tribal court for misdemeanor domestic violence that was intentionally downgraded to a misdemeanor offense although the charge involved use of a firearm, a federal felony.  On information and belief, the tribal court records showing the misdemeanor domestic violence conviction has been expunged.

56.  On information and belief, defendant Leeson Velarde conspired with the other named defendant Police Officers and defendant Hoyt Velarde so that plaintiff or anyone else would not disclose the fact of his misdemeanor domestic violence conviction to anyone before he was appointed as the Nation's Police Chief. On information and belief, plaintiff and other Police Officers

-17-

in the department were aware that defendant Hoyt Velarde and Eli Notsinneh had records of domestic violence by use of a firearm.

57. Plaintiff alleges that defendant Esteban Blanco testified falsely under oath at the March 2, 2001 hearing and committed perjury by referring to weapons that Gallegos had purportedly stolen. As of January 30, 2001, the BIA did not have any investigations open on plaintiff for any reason. On information and belief, defendant Blanco was one of the persons who broke into plaintiff's office that had been secured, stole plaintiff's property and the confidential personnel files of non-member police officers, including Mike Lobato.

58. On information and belief, attorneys from the law firms of Miller, Stratvert & Torgeson, P.A. and Nordhaus, Haltom, Taylor, Taradash & Bladh, LLP knew that the charges were not substantiated by credible and relevant evidence and that, if the hearing were held before a tribal administrative panel, plaintiff Gallegos would, more than likely, be deprived of his due process and right to put on case-in-chief.

59. In doing the acts and/or omissions alleged herein, defendants Hoyt Velarde, Doreen Vigil, Lillian Veneno, Tina Gomez, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco and each of them, individually and/or acting in concert with one another, conspired for the purpose of depriving plaintiff, either directly or indirectly, of his right to continued employment, equal protection of the law or of equal privileges and immunities under the laws as alleged in this Complaint in violation of 42 U.S.C. §1985.

60. As described above, on July 20, 1999, defendant Tina Gomez issued a determination that Gallegos' disciplinary action against Anderson for falsifying a police incident report was invalid due to "Personnel Policies and Procedures" not being followed by management. On the other hand, the BIA found sufficient evidence to sustain the allegation leveled by Gallegos against Officer

Anderson.  Plaintiff alleges that defendants Veneno and Gomez engaged in a pattern of behavior calculated and intended to deprive plaintiff Gallegos of his right to due process by refusing to insure that defendant Hoyt Velarde followed disciplinary protocols and procedures against Gallegos while not insisting on strict adherence to the same protocols and procedures when members of the "rogue" group of tribal member police officers of the Nation's Police Department were subjected to disciplinary action.

61. As a result of said conspiracy and/or conspiracies by defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco, Lillian Veneno, and Tina Gomez, and each of them, plaintiff is entitled to recover damages in the amounts to be determined according to proof.

62. Plaintiff is further informed and believes that each named defendant-member of the Nation's Council, and each of them, had the power to stop and/or aid in preventing the conspiracy and/or conspiracies by defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco, Lillian Veneno, and Tina Gomez, and each of them, as alleged herein, but instead maintained customs, policies, and/or practices which encouraged, authorized, condoned, ratified, failed to prevent and/or failed to aid in the prevention of the wrongs conspired to be done by defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco, Lillian Veneno, and Tina Gomez as alleged herein.

63. As a result of said customs, policies and/or practices, each named defendant-member of the Nation's Council are liable under 42 U.S.C. §1986 for their failure to stop and/or for failure to prevent the wrongs conspired to be done by defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco, Lillian Veneno, Tina Gomez, including the theft of firearms and other personal property as alleged herein and had the power to prevent or aid in

preventing the commission of the same, and neglected and/or refused to do so in violation of 42 U.S.C. §1986.

64. The Nation does not have a legitimate interest in covering up mismanagement of its Police Department or corruption within that tribal agency and cannot justify retaliation against whistleblowing as a legitimate means of avoiding the disruption of the group of "rogue" police officers' activities as described in this Complaint that would necessarily accompany such exposure.

65. The actions taken by the Nation, as a legislative body, to uphold the termination of plaintiff Gallegos on October 2, 2000, cannot immunize defendants Claudia Vigil-Muniz, Stanford Salazar, Troy Vicenti, Tyron Vicenti, Herbert Muniz, Carson Vicenti, Lester Andres, and Ron Julian from individual liability since "legislative" actions cannot be unreasonably employed to protect the individual conspiracies of tribal employees, acting outside the scope of their lawful authority, to deprive another employee of their right to due process and continued tribal employment.  On information and belief, plaintiff alleges that the Nation's Council affirmed his termination without an evidentiary basis since it would not take corrective or disciplinary action against nine of the Nation's Police Officers as recommended by a federal grand jury as a result of a BIA Internal Affairs investigation instigated by plaintiff's "whistleblowing" activity.

66. As a result of the conspiracy and/or conspiracies by all individual defendants, plaintiff is entitled to recover damages in amount to be determined according to proof.

**SECOND CAUSE OF ACTION**
**(25 U.S.C. § 1301 *et seq.*)**
**(AGAINST NATION AND ALL DEFENDANTS)**

67. Plaintiff Gallegos incorporates by reference and re-alleges Paragraphs 1 though 66.

68. No Indian Tribe in exercising powers of self-government shall: a) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and

seizures or b) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.

69. As alleged above, plaintiff suffered the loss of his employment, personally owned firearms, other personal property, and his excellent reputation as a police officer, as a consequence of injury to his right to due process and equal protection of law and right to be secure in his papers and effects against unreasonable seizures as guaranteed under the ICRA.

70. As against the defendant Nation, Hoyt Velarde, Doreen Vigil, Lillian Veneno, Tina Gomez, Claudia Vigil-Muniz, Tyron Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz, in his/her/their capacity as employees or official policy maker(s) for the Nation, the plaintiff alleges that the acts, and/or omissions alleged in the complaint herein are indicative and representative of a repeated course of conduct by members of the Nation's Police Department tantamount to a custom, police or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights and ICRA rights of tribal members and both tribal members and non-tribal members employees.

71. Plaintiff is further informed and believes that the acts alleged herein are the direct and proximate result of the deliberate indifference of defendant Nation, Hoyt Velarde, Doreen Vigil, Lillian Veneno, Tina Gomez, Claudia Vigil-Muniz, Tyro Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz, and each of them, to repeated acts of police misconduct which were tacitly authorized, encouraged or condoned by the Nation.

72. The injuries to plaintiff, were the foreseeable and the proximate result of said customs, policies, patterns and/or practices of defendants Nation, Hoyt Velarde, Doreen Vigil, Lillian Veneno, Tina Gomez, Claudia Vigil-Muniz, Tyro Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz, and each of them.

73. Plaintiff is informed and believes that as a result of the defendant Nation's policy of indifference, a custom or practice developed within the Nation's Police Department whereby it was an accepted practice for police officers charged with upholding the laws of the United States of America and the laws of the Nation, abided by a "Code of Silence." Under this Code, police officers routinely failed to report or take action against fellow police officers who engaged in misconduct, including, but not limited to, defendants Doreen Vigil, Leeson Velarde, Isaac Royston, and Timothy Anderson.

74. Plaintiff is further informed and believes and upon such information and belief alleges that Plaintiff's damages and injuries were caused by customs, policies, patterns or practices of the Nation, Hoyt Velarde, Doreen Vigil, Lillian Veneno, Tina Gomez, Claudia Vigil-Muniz, Tyro Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz, and each of them, of deliberate indifference in the training, supervision, and/or discipline of defendants Leeson Velarde, Isaac Royston, Timothy Anderson, and/or other of the Nation's Police Officers acting in concert with them.

75. The aforementioned customs, policies or practices of Defendants Nation, Hoyt Velarde, Doreen Vigil, Lillian Veneno, Tina Gomez, Claudia Vigil-Muniz, Tyron Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz, and each of them, resulted in the deprivation of plaintiff's rights protected under the ICRA, including the following: 1) the right not to be deprived of liberty without due process of law and equal protection of the law and 2) the right to be free from unreasonable seizures.

76. Said rights are substantive guarantees under the ICRA.

WHEREFORE, Plaintiffs pray for relief as herein set forth.

////

-22-

### THIRD CAUSE OF ACTION
### (25 U.S.C. § 1301 *et seq.*)
### (AGAINST DEFENDANTS HOYT VELARDE, DOREEN VIGIL,
### LILLIAN VENENO, TINA GOMEZ)

77. Plaintiff Gallegos incorporates by reference and re-alleges Paragraphs 1 though 76.

78. Plaintiff is informed and believes that officials of the Nation, including members of the Human Resources Department,defendants Hoyt Velarde, Doreen Vigil, Lillian Veneno and Tina Gomez, knew and/or should reasonably should have known about the repeated acts of misconduct by Leeson Velarde, Isaac Royston, Tim Anderson and other of the Nation's Police Officers.

79. Despite having notice, plaintiff is informed and believes that defendants Hoyt Velarde, Doreen Vigil, Lillian Veneno and Tina Gomez, and each of them, met at one time or another, approved, ratified, condoned, encouraged, agreed to turn a blind eye to or authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers, thus, wrongfully immunizing them from discipline.

80. Plaintiff is further informed and believes that at the time of the subject incidents, defendants Hoyt Velarde and Doreen Vigil, supervised Officers Leeson Velarde, Isaac Royston, and other members of the Nation's Police Department acting in concert with them, and specifically approved and ratified their conduct as alleged herein, thus, allowing them to establish a scheme to fabricate the basis for plaintiff's termination from employment.

81. Plaintiff is further informed and believes that as a result of the deliberate indifference, reckless and/or conscious disregard for the misconduct by Officers Leeson Velarde, Isaac Royston, Timothy Anderson and other members of the Nation's Police Department by defendants Hoyt Velarde, Doreen Vigil, Lillian Veneno, and Tina Gomez, said officers were encouraged to continue their course of misconduct and violated his rights as alleged in this Complaint.

82. The aforementioned acts and/or omissions and/or deliberate indifference by officials of

the Nation, including the Human Resources Department, and officials of the Nation's Police Department, defendants Hoyt Velarde, Doreen Vigil, Lillian Veneno, and Tina Gomez, resulted in the deprivation of plaintiffs rights as guaranteed under the ICRA including the following: 1) the right not to be deprived of liberty without due process of law and equal protection of the law and 2) the right to be free from unreasonable searches and/or seizures.

83. Said rights are substantive guarantees under the ICRA.

Wherefore, Plaintiff prays for relief as hereinafter set forth.

## STATEMENT OF DAMAGES

84. Plaintiff incorporates by reference and re-alleges herein paragraphs 1 through 83.

85. As a result of the acts and/or omissions of defendants, and each of them, as alleged herein, plaintiff suffered all and/or some of the damages listed below:

a. General damages including, but not limited to, past, present and future damages for pain, suffering, emotional distress, loss of employment in amounts to be determined according to proof;

b. Past, present and/or future damages for wage loss and/or damage to career in amounts to be determined according to proof;

c. Past, present and/or future damages for wage loss and/or damage to plaintiff's career as a law enforcement officer in amounts to be determined according to proof;

d. Past, present and/or future damages for attorneys' fees, expenses, court costs, and/or other costs incurred in connection with the underlying wrongful termination from employment and false accusations of criminal theft of tribal property as a result of the acts and/or omissions of defendants and/or each of them.

86. The acts and/or omissions of defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco, Lillian Veneno and Tina Gomez were

-24-

intentional, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the plaintiff, his reputation as law enforcement officer of the highest integrity and his valuable personal property, including personally owned firearms and files. Accordingly, plaintiff prays for an award of punitive and exemplary damages in amounts to be determined according to proof.

87. The acts and/or omissions of defendants Claudia Vigil-Muniz, Tyron Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz as individuals and outside of the scope of their official duties were intentional, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of the plaintiff and his reputation as law enforcement officer of the highest integrity. Accordingly, plaintiff prays for an award of punitive and exemplary damages in amounts to be determined according to proof.

88. The acts and/or omissions of the defendant Nation and defendants Claudia Vigil-Muniz, Tyron Vicenti, Troy Vicenti, Carson Vicenti, Ronald Julian, Lester Andres and Herbert Muniz, as officials of the Nation, and defendants Hoyt Velarde, Doreen Vigil, Leeson Velarde, Isaac Royston, Timothy Anderson, Esteban Blanco, Lillian Veneno and Tina Gomez were taken in clear disregard to the rights of plaintiff as guaranteed under the ICRA. Accordingly, plaintiffs prays for relief in the form of a declaration that: a) he was deprived of his rights as defined in the ICRA; b) his termination from tribal employment was wrongful; c) he was denied a hearing to present proof before the tribal administrative panel that his firing was wrongful; d) he was deprived of his personal firearms and other personal property without due process and compensation; and e) sovereign immunity cannot save a tribal council from declaratory relief when the council acts legislatively and with clear disregard to the rights of persons as guaranteed under the ICRA and in an obvious effort to protect tribal wrongdoers from civil and criminal liability.

/ / / /

-25-

**PRAYER**

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

1. General damages to be determined according to proof;

2. Special damages, including but not limited to related expenses, wage loss and/or damage to career and professional reputation; attorney fees, court costs and/or other out of pocket expenses in connection with the allegations herein set forth;

3. Declaratory relief as stated above;

4. Attorney fees pursuant to statutes;

5. Cost of suit;

6. Punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

7. Actual cost for the loss of plaintiff's personal property upon further proof.

8. For prejudgment interest as permitted by law;

9. For such other and further relief as the Court may deem just and proper.

Dated: August 29, 20002

DENNIS G. CHAPPABITTY, OK Bar #1617
P.O. Box 292122
Sacramento, CA 95829
(916) 682-0575 (voice/fax)

Attorney for Plaintiff Phillip Gallegos

Dated: August 23, 2002

HANNAH B. BEST, N.M. Bar #216
Hannah Best & Associates
1003 Luna Circle, N.W.
Albuquerque, N.M. 87102
(505) 247-2727

Sponsoring Member of Federal Bar (L.R. 83.3)

-26-

# ~Dennis G. Chappabitty~

### Attorney at Law

#### Federal Practice

March 17, 2001

***Fax Transmittal w/Original to Follow***

Lillian Veneno, Director
Human Resources Department
Jicarilla Apache Nation
P.O. Box 507
Dulce, New Mexico 87528

**Re:** **Notice of Appeal of Panel Recommendation, dated March 7, 2001, and Decision by the President, dated March 13, 2001 to Approve of the Discharge of Grievant Phillip Gallegos and Written Response in the Matter of the Grievance.**

Dear Ms. Veneno:

By decision, dated March 13, 2001, President Claudia Vigil-Muniz approved a March 7th Panel recommendation that the discharge of Mr. Gallegos be upheld and the grievance dismissed as lacking merit through the preponderance of evidence and testimony given at the hearing. The recommendation in the matter of *Phillip Gallegos v. Jicarilla Apache Nation* was by majority vote of 2 to 1.

The Jicarilla Apache Tribe Personnel Manual, Chapter 7, Section 1.(10) authorizes Mr. Gallegos to file an appeal of the President's decision to uphold the discharge in issue by submitting a written response with the Tribal Personnel Office within 5 calendar days. This letter serves as formal Notice of Appeal of the March 7th Recommendation and the March 13th decision approving of the discharge.

In accordance with the provisions cited above, The Tribal Personnel Office shall make a written notification to the Tribal Council that they shall serve as a grievance appeal panel at a regularly scheduled or special meeting.

Further, Grievant-Appellant Gallegos provides his written response to support his appeal to the Tribal Council by citing the following errors and/or irregularities in the March 1st and 2nd consolidated hearing that caused him direct prejudice and deprived him due process to present fully present his case to the Panel:

**Violation of Grievant's Right to Due Process:**

At the close of the Tribal Police Department's case-in-chief to show just cause for discipline, Grievant-Appellant was deprived of his right by the Panel to show why the discharge was unfair. There is an indication that Panel members and the Hearing officer's decision to conclude the hearing prior to complete presentation of Grievant's case was affected by their

---

Tel./Fax (916) 682-0575 • Email: chap@2xtreme.net
P.O. Box 292122, Sacramento, CA 95829

Member, Oklahoma Bar Association #01617
*Not a member of the California Bar

**EXHIBIT A**

Letter to Lillian Veneno, Director, JAPN Human Resources Office
Re:     Notice of Appeal and Written Response
March 17, 2001
– Page 2 –

personal desire to conclude the proceeding by noon on March 2nd.  Mr. Gallegos could have
successfully presented his own testimony (w/favorable documentary evidence) and completed
the testimony of persons on his list of witnesses who would testify in his favor by 5:00pm on
that day. A finding of "lack of merit" in regards to Gallegos grievance is plain error since such
a conclusion is not possible when he was <u>kept</u> from putting on his case before the Panel.

Had the Panel allowed him and his attorney, Dennis G. Chappabitty, time to put on his
case-in-chief, it would have been more likely than not that he would have proven, by the
preponderance of the evidence, that his October 2, 2000  discharge was unfair and <u>not</u> based
on relevant and credible evidence tending to show that he was guilty of wrongdoing.  Written
grievance hearing procedures used at the hearing give the grievant the right to show why
discipline was unfair.  Grievant-Appellant Gallegos was deprived of this fundamental right.

**Same Evidence, Same Results:**

Both Grievance Panels heard <u>exactly the same witnesses for both sides and both Panels
reviewed the same evidence</u>.  The charges specified in the October 2nd notice of terminations
for both Alan and Phil were the same.  For these reasons, a decision by the Gallegos Panel to
uphold the termination is in error and should be reversed by the Tribal Council.

**The Employer did not follow proper disciplinary procedures:**

Grievants Gallegos and Tafoya did not know the "work rule" they supposedly violated.
Testimony at the hearing shows that Hoyt Velarde never communicated to either Gallegos or
Tafoya the specific rules they were violating.  He kept secret from Gallegos the majority of the
details that were allegedly the reason for the charges listed in the October 2nd notice of
termination.  Testimony that Gallegos would have produced had he been allowed put his case
on would show that he did not understand the rule or expectation that Hoyt Velarde claims was
violated in his October 2nd notice.  Velarde never explained any problem to Gallegos but
encouraged other police officers with bad attitudes toward Gallegos to make unsupported
claims, unsubstantiated allegations and other accusations against him  based on mere hearsay
and rumor.

Testimony shows that Velarde never conducted a fair and neutral investigation of facts
prior to imposing discipline in the form of immediate termination.  Gallegos would have testified
that Velarde did not interview any officers except those with bad attitudes toward him and that
he never interviewed Gallegos but laid out a trap to cause the basis for the October 2nd firing.
Velarde even signed an outstanding evaluation prepared by Alan Tafoya of Gallegos on June 14,
2000.  Velarde admitted that he had never discussed with Gallegos and Tafoya the supposed
problems with them that he had identified in his May 26, 2000 draft "Action Plan".

We believe that had Gallegos been able to put on his case, he would have firmly
convinced the Panel that procedures were not followed during the termination process.

Letter to Lillian Veneno, Director, JAPN Human Resources Office
Re:    Notice of Appeal and Written Response
March 17, 2001
- Page 3 –

**48 Hour Rule Violation:**

Hoyt Velarde refers to the Human Resources Office as possessing the documentary backup to support his October 2nd firings of Tafoya and Gallegos.  Had Gallegos been able to testify he would swear that he tried on October 2nd to get the supporting documents from the Human Resources Office but they told him they did not have the information.  The Police Department and the Human Resources Department failed to give Gallegos the required specific information to allow him to defend against his firing.

The Personnel Manual requires that the employee must be given a written notice signed by the Tribal President **within forty-eight (48) hours** specifying the effective date of the termination, charge, the specific behavior and the dates (where appropriate) that supports the charge.  Testimony at the hearing proves that Hoyt Velarde, the Human Resources Department and the President never complied with giving this information to Gallegos within the time required.  This deprived him of due process and put him and his attorney at a severe disadvantage since the Human Resources Personnel repeatedly surprised them with documents they had never seen even up to the day of the hearing!  This fundamentally unfair.

Further, the Hearing Panels and the Hearing Officer's refusal to restrict the testimony and evidence to information outside of the "48 hour rule" opens up the door to abuses similar to the one here where the grievant is continually surprised with new evidence of questionable origin up and until the day of the hearing.  If the Tribal Council allows this, then there is no need to even have a grievance procedure available for disciplined tribal employees.

**The Police Department produced no credible evidence to prove wrongdoing:**

Testimony shows that Hoyt Velarde did not produce one credible shred of evidence or testimony that Gallegos had: 1) wilfully neglected to perform his duties,2) disregarded the Personnel Manual as well as departmental policies and regulations, 3) violated reasonable or official orders, refused to carry out lawful/reasonable directions given by his immediate supervisor or engaged in other acts of insubordination, 4) engaged in criminal, dishonest or other conduct which interfered with his effective job performance or had an adverse effect on the efficiency of the Jicarilla Apache Nation service, or 5) disregarded or violated the Tribal Laws or Ordinances of the Jicarilla Apache Nation.  Hoyt Velarde's October 2nd termination specified these charges and the President approved of Gallegos termination although the record contained no specific dates, times, witnesses, etc. to support the unproven charges.

Had Gallegos had been given his right to put on his case-in-chief, he would have produced credible testimony and evidence on his behalf that those employees in the Police Department who were complaining about his behavior  were employees who were continually late to work, illegally "moonlighting", lying on investigative reports or engaging in other unprofessional, unethical or illegal behavior.  Gallegos reported these lazy and indolent police officers to his supervisor and wrote these complaints out in the form of sworn incident reports.

Letter to Lillian Veneno, Director, JAPN Human Resources Office
Re:    Notice of Appeal and Written Response
March 17, 2001
- Page 4 -

**Gallegos would have proven his firing was retaliatory:**

The fact that the Grievance Panel cut the hearing short deprived Gallegos of his right to show that Hoyt Velarde's October 2nd firing of him was retaliatory. Acting Chief Tafoya and Sgt. Gallegos were very concerned about credible indications that Hoyt Velarde and other police officers, including Leeson Velarde, were participating in numerous violations of departmental procedure and possibly engaging in criminal activity.

Gallegos hearing strategy would have shown that he had a duty to file incident reports on other officers for engaging in questionable, unethical or unlawful behavior.  As a consequence of Gallegos executing his duty to the Apache People to protect their welfare and safety, he can produce credible evidence showing that Hoyt Velarde had openly encouraged, secretly met and conspired with other police officers loyal to him over a period of several months to produce false testimony and bogus grounds to fire him.

In his opening statement on March 1st, Dennis G. Chappabitty promised that Gallegos would produce admissible and credible evidence and testimony that both he and Acting Chief Tafoya were reporting indications of internal departmental corruption to the FBI, BIA and taking other corrective action against a group of officers loyal to Hoyt Velarde. Gallegos would have shown that he, the Acting Chief and other officers were reporting possible corruption:

1)   indications of unlawful sex by police officers with juvenile Apache females;

2)   indications of use of drugs at parties held at police officer's homes on the reservation;

3)   indications of hiding or destroying records of convictions of domestic violence involving officers loyal to Hoyt Velarde;

4)   indications of Hoyt Velarde's favoritism of certain police officers like Doreen Vigil, Leeson Velarde, Issac Royston and Tim Anderson to a point where they were able to circumvent departmental procedures;

5)   indications of physical abuse by favored police officers of arrested Apaches;

6)   indications of intimidation of police officers reporting incidents of bad behavior committed by Hoyt's "untouchables" and covering up of incident reports when Velarde's relations (daughter) were the subject of suspected criminal activity;

7)   indications of the persistence of outside "double" employment by Leeson Velarde and Issac Royston held by the BIA as "criminal conduct" which jeopardized the physical safety of other police officers when they failed to respond or delayed their response to calls for backup;

**Letter to Lillian Veneno, Director, JAPN Human Resources Office**
**Re:     Notice of Appeal and Written Response**
**March 17, 2001**
**- Page 5 –**

8)   indications that Hoyt Velarde converted funds derived from the forfeiture sale of confiscated vehicles to his own personal use;

9)   indications that Hoyt Velarde supported Tim Anderson, a loyal follower, although the BIA agreed with Sgt. Gallegos that Anderson had engaged in an act of swearing falsely on a police incident report;

10)   indications that Hoyt Velarde demanded details from officers on outside or internal investigations that may have implicated himself or his loyal officers;

11)   indications of theft of personal items, money and other property by police officers from the persons and vehicles of illegal immigrants stopped on the reservation;

12)   indications that Hoyt Velarde and other of his loyal officers created a bogus and false basis to accuse Tafoya and Gallegos of being unprepared for the 2000 Little Beaver Celebration when this was not the case;

13)   indications that Hoyt Velarde and the Human Resources Department were working together to make sure that Gallegos and Tafoya would not have access to the specific information supposedly supporting the October 2nd charges;

14)   indications that Hoyt Velarde was creating divisiveness based on racial lines among police officers to form groups against Gallegos and Tafoya and in favor of him and his loyal officers;

15)   indications that Hoyt Velarde was defrauding the State of New Mexico out of funds by listing himself as eligible to receive a commission from the state when he was not so qualified;and

16)   indications that Hoyt Velarde began interfering with Tafoya and Gallegos in the execution of their job duties during Raleigh Tafoya's illness and subsequent death

For the reasons stated above, the Tribal Council should immediately reverse the Gallegos Grievance Panel's March 2nd decision upholding termination and the March 13th President's concurrence in the Panel's recommendation or allow Gallegos to present his side of the story at a full hearing before the Council.  Mr. Gallegos reserves the right to supplement this notice and written response after he reviews the transcript of the March 1st and 2nd proceeding.

Dennis G. Chappabitty
On behalf of Phillip Gallegos