IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP GALLEGOS,

        Plaintiff,

v.                                    Civil No. 02-1095

JICARILLA APACHE NATION, a Federally-
Recognized Indian Tribe; CLAUDIA VIGIL-
MUNOZ, as a Tribal Council Member and
Individually; STANFORD SALAZAR, as a
Tribal Council Member and Individually;
TROY VICENTI, as a Tribal Council Member
and Individually; TYRON VICENTI, as a Tribal
Council Member and Individually;
HERBERT MUNIZ, as Tribal Council Member
and Individually; CARSON VICENTI, as a
Tribal Council Member and Individually;
LESTER ANDRES, as a Tribal Council Member
and Individually; RONALD JULIAN, as a Tribal
Council Member and Individually;
HOYT VELARDE, as a Tribal Employee
and Individually; DOREEN VIGIL, as a Tribal
Employee and Individually; LEESON VELARDE,
as a Tribal Employee and Individually;
ISAAC ROYSTON, as a Tribal Employee
and Individually; TIMOTHY ANDERSON,
as a Tribal Employee and Individually;
ESTEBAN BLANCO, Tribal Employee
and Individually; LILLIAN VENENO, as a
Tribal Employee and Individually; and
TINA GOMEZ, as a Tribal Employee and
Individually,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss, filed

September 26, 2002 **(Doc. 21)**. Defendants (collectively, "JAN Defendants") contend that the

Jicarilla Apache Nation ("Nation") and its officials are entitled to sovereign immunity, and that

this Court does not have subject matter jurisdiction over the action.  Defendants offer alternative theories for dismissal of either specific parties or specific claims: several of the named Legislative Council members must be dismissed from the suit in their official capacities because they no longer serve on the council; Plaintiff has failed to state a claim under any 42 U.S.C. § 1985 and § 1986; and service on the individual Defendants in their individual capacities was inadequate.  Having reviewed the parties' submissions and the applicable law, I find that Defendants' motion is well-taken and will be granted, for reasons articulated below.

**Background**

Plaintiff Gallegos, who is Hispanic and not a member of the Nation, was formerly employed as a Patrol Sergeant in the Nation's Police Department.  He alleges that he was wrongfully terminated as a result of his uncovering evidence of possible criminal activities within the Nation's Police Department, which were eventually reported to federal agencies.[1]  Plaintiff contends that the Nation routinely tolerated and acquiesced to such conduct not only by failing to take necessary measures to prevent and curtail such misconduct, but by firing "whistleblowing" non-tribal members employees. Compl., ¶ 13.  Plaintiff further alleges that Defendants engaged in a conspiracy to wrongfully manipulate the appeal of his wrongful termination, thus depriving him of his right to due process and equal protection of the law as a non-tribal member.  Gallegos presents these claims as violations of 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the Indian Civil Rights Act, 25 U.S.C. §§ 1301-1341.  He seeks money damages as well as declaratory relief against the JAN Defendants.

---

[1] This conduct included "fraud, embezzlement, falsifying reports, falsifying time cards, use of excessive force, assaults, battery under the color of authority, conspiracy to violate federal and tribal civil rights of citizens, the hiding of criminal wrongdoings of police officers from federal prosecutors when such reporting was mandatory and leaving their assigned duty posts without authorization."  Compl., ¶ 52.

**Discussion**

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   In ruling on a motion to dismiss, this Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Housing Authority of the Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). Defendants move for dismissal under Fed.R.Civ.P. 12(b)(1) based on sovereign immunity as a jurisdictional bar to Plaintiff's claims; under Rule 12(b)(6) as to Plaintiff's claims under the Indian Civil Rights Act ("ICRA") and §§ 1985 and 1986; and under Rule 12(b)(5) for ineffective service upon the Individual Defendants in their individual capacities.

Plaintiff names numerous Defendants in this lawsuit: the Nation's President (Claudia Vigil-Muniz)[2] and seven Legislative Council members (Stanford Salazar, Troy Vicenti, Tyron Vicenti, Larson Vicenti, Herbert Muniz, Lester Andres and Ron Julian).  He also asserts claims against the Executive Director of Public Safety (Hoyt Velarde); five police officers in the Nation's police department (Doreen Vigil; Leeson Velarde, Isaac Royston, Timothy Anderson and Esteban Blanco); and two employees of the Nation's Human Resources Department (Lillian Veneno and Tina Gomez). Count I in the complaint asserts claims under 42 U.S.C. § 1985-86 against all Defendants as Individuals; Count II is brought under 25 U.S.C. § 1301 et seq., against the Nation and all Defendants; and Count III asserts claims also under 25 U.S.C. § 1301 et seq., against Defendants Hoyt Velarde, Doreen Vigil, Lillian Veneno and Tina Gomez.

---

[2]  The caption erroneously refers to this Defendant as a tribal council member, although she is correctly identified in the Complaint. Compl., ¶ 5.  Also, Defendants point out that the correct legal name of the governing body of the Jicarilla Apache Nation is the "Legislative Council," not "Tribal Council." Deft's Brf. at 2. The Court will therefore make the appropriate substitution where such references are relevant.

**I.    ICRA Claims - Counts I and II**

Plaintiff's claims against the tribe may be summarily dismissed. Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. Puyallup Tribe, Inc. v. Wash Dept. of Game, 433 U.S. 165, 172-73 (1977), cited in Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). This sovereign immunity is maintained absent either an explicit waiver of immunity or express authorization of the suit from Congress. Ordinance 59 Association v. U.S. Dep't of the Interior Sec'y et al., 163 F.3d 1150, 153 (10th Cir. 1998) (citing Santa Clara Pueblo, 436 U.S. 49)).

Plaintiff's claims under ICRA concern Defendants' alleged conspiracy to wrongfully terminate him because he reported misconduct by tribal officials and employees, the denial of a fair grievance, and equal protection of the law as a non-tribal member. Because the sole federal relief available under ICRA against a tribe or its officers is a writ of habeas corpus, Counts I and II must be dismissed. Santa Clara Pueblo, 436 U.S. at 63. Dismissal of these claims applies to claims for declaratory and injunctive relief as well as monetary damages. Id. at 72.

*A.    Dry Creek Exception*

Defendants are correct that the *Dry Creek Exception*[3] does not apply to this case. Although Plaintiff is a non-Indian, the other two *Dry Creek* requirements are not met. A tribal forum was available: Plaintiff states in his complaint that his grievance hearing was held before a three-member panel, and Plaintiff exercised his right of appeal. Plaintiff's dissatisfaction with the result does not carve out a fourth prong to the *Dry Creek* exception. White v. Pueblo of San Juan,

---

[3] This exception to Santa Clara which would allow a suit to proceed against a tribe in federal court requires (1) that the dispute involve a non-Indian, (2) the matter in dispute is not intra tribal, and (3) no tribal forum for the dispute exists. Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes, 623 F.2d 682, 685 (10th Cir. 1980).

728 F.2d 1307, 1312 (10th Cir.1984) (seeking out of tribal remedy is not "merely a requirement that the exhaustion of tribal remedies is a prerequisite to federal jurisdiction, but instead, that tribal remedies, if existent, are exclusive"). Nor can I conclude that what is at heart a wrongful termination action does not concern tribal issues, which would bring the case within the *Dry Creek* exception. See, e.g., Penobscot Nation v. Fellencer, 164 F.3d 706 (1st Cir. 1999) (decision of tribal council to terminate employment of community health nurse who was non-Indian, was internal tribal matter); EEOC v. Karuk Tribe Housing Authority, 260 F.3d 1071 (9th Cir. 2001) (tribe immune from wrongful termination suit under ADEA);[4] accord, EEOC v. Cherokee Nation, 871 F.2d 937 (10th Cir. 1989). My decision takes into account the narrow interpretation our circuit has afforded the *Dry Creek* exception. Nero et al. v. Cherokee Nation of Okla., 892 F.2d 1457, 1450, n.5 (10th Cir. 1989) (recognizing exception as "requiring narrow interpretation in order to not come into conflict with the decision of the Supreme Court in Santa Clara") citing White, 728 F.2d at 1312. This cautious approach to the *Dry Creek* exception can have the result of precluding federal court jurisdiction over non-Indian complaints brought under the ICRA "even if tribal remedies are unavailable." Nero, 892 F.2d 1460, n.5 (citing Ramey Const. Co. v. Apache Tribe of Mescalero Reservation, 673 F.2d 315 (10th Cir.1982) (suggesting that the *Dry Creek* exception be applied only in cases with similar facts).

---

[4] In Karuk the court concluded that the relationship between the Housing Authority and plaintiff alleging an ADEA claim touched on "exclusive rights of self-governance in purely intramural matters." 260 F.3d at 1083 (citation omitted). Also, while the "self-governance" analysis distinguishing between "government functions" and "commercial activities undertaken by tribes" may consider the employment of non-Indians as a factor, the inquiry settles on whether the tribe is operating exclusively within the domain of the Tribe and its members, or whether the activities are commercial or related to interstate commerce. 260 F.3d at 1081. Thus, the fact that Plaintiff is a non-member does not affect this third prong of my inquiry into whether this case fits into the *Dry Creek* exception.

B.      *Individual Defendants*

Further, sovereign immunity bars Plaintiff's ICRA claims whether the individual Defendants are sued in their official or individual capacities.  Suits against these individuals in their official capacities operate the same as if they were brought against the tribe itself.  Nero, 892 F.2d at 1462) (interest in preserving "inherent right of self-government in Indian tribes is equally strong" when suit is brought against individual officers of the tribal organization as when brought against the tribe itself"); Bruette et al. v. Knope et al., 554 F.Supp. 301, 304 (E.D.Wis. 1983) (common law immunity from suit enjoyed by Indian tribes extended to defendants who were tribal policemen which effectively shielded them in their official capacities from actions, either for injunctive or for monetary relief, brought pursuant to 25 U.S.C. § 1302).  Since ICRA provides rights only against the tribe and tribal governmental subdivisions as opposed to tribal members acting in their individual capacities, Plaintiff's claims under ICRA cannot proceed against Defendants in their individual capacities.  Cmp., Bruette et al., at 304 (dismissing suit brought under ICRA against tribal policemen in their individual capacities). Therefore, Counts II and III are dismissed against the Tribe and all of the individual Defendants in both their individual and official capacities.

**II.      Claims under 42 U.S.C. §§1985-86 (Count I)**

A.      *Tribe and Defendants in Official Capacity*

Plaintiff's claims under § 1985 and § 1986 against the tribe are dismissed on the basis of sovereign immunity, as discussed above with regard to Plaintiff's claims in Counts II and III.  As to claims brought under § 1985 generally against the individual Defendants, the same common law immunity that shielded Defendants in their official capacities from suit in Plaintiff's claims brought under ICRA, also shields them from suit in the claims brought under § 1985. Means v.

6

Wilson, 522 F.2d 833, 838 (8th Cir. 1975), cited in Bruette, 554 F.Supp. at 301 (citing Santa Clara Pueblo, 436 U.S. at 59-72). Therefore, claims contained in Count I against all of the individual Defendants in their official capacities will be dismissed.

*B.     Individual Defendants in Individual Capacities*

Claims brought under § 1985 and § 1986 against the individual Defendants in their individual capacities is another matter, as such claims are allowed against individual tribe members.[5] See Means v. Wilson, 522 F.2d at 838 (district court erred in concluding that sovereign immunity applied to suits brought under § 1985(3) against individual Indians); E.F.W. et al. v. St. Stephen's Mission Indian High School, et al., 51 F.Supp.2d 1217, 1231 (D.Wyo. 1999) (tribal sovereign immunity does not extend to claims against individual Indians under the federal civil rights statutes for such persons sued in their individual capacity). However, their viability ends upon further inquiry into whether this court has jurisdiction over these Defendants in claims brought under § 1985 and § 1986.

*C.     § 1985(3)*

The complaint does not clearly specify which subsection of § 1985 Defendants are alleged to have violated. Because the phrase "equal protection" appear throughout the complaint, I will construe the complaint to allege an action under § 1985(3). The provisions of 42 U.S.C. §

---

[5] Since the Nation President and seven council members clearly belong in the category of tribal officials, the analysis pertaining to jurisdiction over the Defendants in their individual capacity may be superfluous. See Bruette, 554 F. Supp. at 304, n.* (applying dismissal of tribal official to defendant who was sued in his capacity as a "tribal policeman"). With regard to the remaining Defendants who are also sued in their "individual capacity," it is not so clear how far this legal fiction extends. Seven of the "individual" Defendants are sued in their capacity as tribal policemen; Mr. Velarde is being sued in his capacity as executive director of public safety; and Ms. Veneno and Ms. Gomez are sued in their capacities as human resource employees. Nevertheless, for the sake of thoroughness, my analysis encompasses any and all Defendants who can arguably be included in the category of Defendants who can be sued in their individual capacity.

1985(3) provide for recovery of damages by a party who is injured as a result of a conspiracy to deprive any person of equal protection of the laws or of equal privileges and immunities under the laws.[6] However, § 1985(3) does not create an independent substantive cause of action. Wheeler v. Swimmer et al., 858 F.2d 259, 261 (10th Cir. 1987) (claims brought under § 1985(3) and § 1986 must "point to independent substantive rights enforceable in the federal courts"); Nero, 892 F.3d at 1461 (plaintiff must allege violations of independent substantive statutory or constitutional provisions to recover under § 1985(3) and § 1986); Montgomery et al. v. Flandreau Santee Sioux Tribe, et al., 905 F.Supp.740 (S.D.Dak. 1995)(to satisfy the requirements of § 1985(3) claim, plaintiff must allege violations of statutory or constitutional rights that the federal courts have jurisdiction to redress (citing Wheeler, 835 F.2d at 261).

As noted above, ICRA does not provide a basis for federal jurisdiction beyond habeas corpus. Wheeler, 835 F.2d at 261 (citing Santa Clara Pueblo, 436 U.S. at 63); Nero, 892 F.2d at 1462 (ICRA does not provide an independent basis for suit under §§ 1985(3) and 1986); Montgomery, 905 F.Supp. at 746 (where plaintiff could not bring claim under ICRA, § 1985(3) did not provide independent remedy based on ICRA).

Further, because the federal Constitution does not constrain either tribes or tribal officials, Plaintiff cannot get to a cause of action under § 1985(3) through the usual Fourteenth Amendment equal protection route. Means v. Wilson, 822 F.2d at 837 (§ 1985(3) claim against individual tribal members failed for lack of either constitutional source or congressional power to "reach the private conspiracy alleged in the complaint"); Trans-Canada Enterprises, Ltd. v.

---

[6] The essential elements of a section 1985(3) claim are: 1) a conspiracy; 2) to deprive plaintiff of equal protection or equal privileges and immunities; 3) an act in furtherance of the conspiracy committed or caused to be committed by the conspirator; and 4) an injury or deprivation resulting therefrom. Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).

Muckleshoot Indian Tribe et al, 634 F.2d 474, 476, 477 (9th Cir. 1980) (constitutional guarantees are not applicable to the exercise of governmental powers by an Indian tribe except to the extent that they are made explicitly binding by the Constitution or are imposed by Congress); Dubray v. Rosebud Housing Authority, 565 F.Supp. 462, 465 (D.S.D. 1983) (United States Constitutional limitations do not apply to tribes, to tribal agencies, or to individual tribal officials) (citing Talton v. Mayes, 163 U.S. 376 (1896); Santa Clara Pueblo, 436 U.S. at 49); Wardle v. Ute Indian Tribe et al, 623 F.2d 670 (10th Cir. 1980) (Various civil rights statutes invoked by employee who had been discharged by Indian tribe did not provide him a cause of action).[7]  Accordingly, I find that this Court has no jurisdiction over Plaintiff's § 1985(3) claims against Defendants in their individual capacities.

D.    *§ 1985(1)* ["Preventing officer from performing duties"][8]

I agree with Defendants that Plaintiff does not even arguably allege a claim under this subsection, although Plaintiff presents a lame effort for the first time in his response to the instant

---

[7] Although Plaintiff uses "due process" to describe the rights upon which he bases part of his claims, § 1985(3) applies only to conspiracies to deprive persons of equal protection, not to conspiracies to deny due process. Collins v. Hardyman, 341 U.S. 651 (1951), overruled on other grounds by Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971); Chafin v. Pratt, 358 F.2d 349, 356, n.10 (5th Cir. 1966); Dunn v. Gazzola, 216 F.2d 709, 711 (1st Cir. 1954).  I therefore give it no further consideration either as a basis for his §1985(3) claim or as alleged under the federal Constitution.

[8] Section § 1985(1) reads as follows: "If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, *any person from accepting or holding any office, trust, or place of confidence under the United States*, or from discharging any duties thereof;  or to induce by like means any *officer of the United States* to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account  of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties."(emphasis supplied)

motion by contending that Defendants prevented him from carrying out his duties as a law enforcement officer in the Nation's Police Department. Plaintiff cannot state a claim under § 1985(1) because by its express language, this subsection applies only to an "officer of the United States," or "any person from accepting or holding any office, trust, or place of confidence under the United States." Plaintiff has not alleged that he belongs in either category. Cmp., e.g., Bruette, 554 F.Supp. at 304 (§ 1983 claim against tribal officer dismissed where claim did not allege that officer was delegated police powers by state rather than the tribe, or that they were attempting to enforce state rather than tribal law or otherwise offering assistance to state authorities such that their conduct could be imbued with state action).

E.     *§ 1985(2)* ("Obstructing justice; intimidating party, witness, or juror")[9]

Plaintiff's claim under this subsection fails for similar reasons. According to Plaintiff, his whistleblowing activities are within the purview of the activities protected by §1985(2). He reported the misconduct of tribal officials and police officers to the Acting Chief of Police, which then allegedly resulted in a request for investigation by federal law enforcement officials. Compl., ¶¶ 14-15. However, § 1985(2) envisions a conspiracy to "deter. . . a party or witness in any court of the United States from attending such court, or from testifying to any matter *pending* therein. .

---

[9] Section § 1985(2) reads: "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

10

. ." (emphasis supplied). Whether or not Plaintiff's efforts may, through a chain of events, turn into or may have already turned into (this is not clear from the complaint) a federal grand jury investigation concerning the allegations which sparked the investigation, is immaterial. Plaintiff was not either "attending" or "testifying to" a matter which was pending at the relevant time. See, e.g., Wright v. No Skiter Inc. et al., 774 F.2d 422, 424 (10th Cir. 1985) ("attending" a court starts from time plaintiff files complaint).

*F.*     *§ 1986*

Section 1986, which provides an action for neglecting to prevent a violation of Section 1985, is premised upon the existence of a valid § 1985 claim. Abercrombie v. City of Catoosa, Okla., 896 F.2d 1228, 1230 (10th Cir. 1990); Wright, 774 F.2d at 424. My finding that Plaintiff has not stated a claim under § 1985 necessarily dispenses with this claim as well.

### III.     Alternative Bases for Dismissal

Defendants seek dismissal of Ronald Julian, Tyrone Vicente, and Stanford Salazar, who held office at the time of his termination. On the day Plaintiff attempted to serve the complaint, new council members were sworn in to replace these Defendants. Since an official capacity suit is still a suit against the state, Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 n.10 (1989), these three former council members cannot be sued in their official capacities because they no longer serve the Nation in their official capacities. Because my findings above dismiss all of Plaintiff's claims on other bases, I need not pass on this issue. The inadequacy of service as to the individual Defendants in their individual capacity is moot for the same reason.

    **THEREFORE**,

    **IT IS ORDERED** that Defendants' Motion to Dismiss **(Doc. 21)** is hereby GRANTED in that:

(1)     this Court has no subject matter jurisdiction over Plaintiff's claims against all Defendants named in Counts II and III on the basis of sovereign immunity and for reasons described above;

(2)     this Court has no subject matter jurisdiction over Plaintiff's claims brought against Defendants under § 1985(3) in Count I on the basis of sovereign immunity and for reasons described above; and

(3)     Plaintiff fails to state a claim under 42 U.S.C. § 1985(1), 42 U.S.C. § 1985(2) and 42 U.S.C. §1986.  The findings in this Memorandum Opinion and Order dismiss all of Plaintiff's claims in this case against all Defendants in their entirety.

A Judgment in accordance with this Memorandum Opinion and Order will issue.

_____
UNITED STATES DISTRICT JUDGE